## COLLECTIVE ACTION SETTLEMENT AGREEMENT AND RELEASE

Premium Guard Inc., including its owners, officers, directors, shareholders, employees, representatives, corporate parents, corporate siblings, subsidiaries, predecessors, successors, affiliates thereof, and otherwise related entities ("Defendant") as well as George Byrd (collectively "Representative Plaintiff"), Representative Plaintiff individually and on behalf of the Class Members (defined below), voluntarily enter into this Collective Action Settlement Agreement and Release (the "Agreement") to settle all claims and issues as set forth more fully below. Representative Plaintiff and Defendant will be collectively referred to as the "Parties."

## BACKGROUND AND RECITALS

1.      Representative Plaintiff filed this case, *Byrd v. Premium Guard Inc., et al.*, Case No. 2:23-cv-01603, in the United States District Court for the Southern District of Ohio, Eastern Division (the "Action"). Representative Plaintiff filed a Notice of Voluntary Dismissal of Defendant Import Products Co., LLC Without Prejudice on September 12, 2023. In the Action, Representative Plaintiff brought claims against Defendant on behalf of himself and others similarly situated under the Fair Labor Standards Act (the "FLSA"), the Ohio Minimum Fair Wage Standards Act ("OMFWSA"), and the Ohio Prompt Pay Act ("OPPA").

2.      Defendant filed an Answer and denied, and continues to deny, the allegations asserted in the Action.

3.      As of the date of this Agreement, in addition to Representative Plaintiff, two (2) opt-in plaintiffs have joined this case ("Current Opt-In Plaintiffs") without the issuance of any formal notice.

4. To avoid the burden, expense, risks, and uncertainty of litigation, the Parties agreed to engage in early settlement discussions.

5. Over the course of many months, the Parties exchanged information and engaged in extensive settlement discussions. The Parties, through their diligent and good faith negotiations, were able to resolve the case. The terms of that agreement are embodied herein.

6. The purpose of this Agreement is to fully and finally settle all Released Claims (defined below) that Representative Plaintiff, Current Opt-In Plaintiffs, and any Claimants (defined below) may have against Defendant and the Released Parties (defined below).

## DEFINITIONS

7. "Approval Order" means the Court's Order approving this Settlement (defined below).

8. "Claimant" means Representative Plaintiff, Current Opt-In Plaintiffs, and each Eligible Settlement Participant (defined below) who completes, signs, and submits a valid and timely Consent Form and Release (defined below) and joins this case as an Opt-In Plaintiff. Representative Plaintiff and Current Opt-In Plaintiffs are not required to submit a Consent Form to receive their Settlement Award or any other payment under this Agreement, as they have already signed and filed their respective Consent Forms.

9. "Consent Form and Release" ("Consent Form") means the form approved by the Parties' counsel, and subject to Court approval, that each Eligible Settlement Participant (defined below) must sign, complete in full, and timely submit within sixty (60) days following mailing of the Notice of Settlement of Collective Action Lawsuit ("Notice of Settlement") and Consent Form to opt in to the case as an Opt-In Plaintiff and receive a Settlement Award (defined below). The

Consent Form will further explain the settlement and claims process. Executed Consent Forms will be filed with the Court by Class Counsel (defined below). A copy of the Consent Form is attached with the Notice of Settlement as **Exhibit A**.

10. "Class Counsel" means Matthew J.P. Coffman, Adam C. Gedling, Kelsie N. Hendren, and Tristan T. Akers of Coffman Legal, LLC.

11. "Court" means the United States District Court for the Southern District of Ohio, Eastern Division.

12. "Covered Period" refers to the period from May 11, 2020 to February 28, 2024.

13. "Current Opt-In Plaintiffs" means the individuals who, as of the date of this Agreement, have submitted a Consent to Join form, which was filed with the Court.

14. "Defendant's Counsel" means Frank L. Day of FordHarrison LLP.

15. "Eligible Settlement Participants" means "[a]ll current and former hourly, non-exempt production employees of Defendant in Ohio who received Base Hourly Wage and Additional Renumeration in any workweek that they were paid for more than 40 hours of work from May 11, 2020 through February 28, 2024." Eligible Settlement Participants, including Representative Plaintiff and Current Opt-In Plaintiffs, are comprised of a group of approximately 117 individuals who were included in the data that Defendant produced. Eligible Settlement Participants who do not join this action by timely submitting a Consent Form will not receive their potential Settlement Award (defined below) and will not release any claims.

16. "Global Settlement Fund" means the gross settlement amount of $40,000.00. The Global Settlement Fund is for the claims asserted in this Action and includes (1) all potential Settlement Awards (defined below); (2) any Service Award (defined below) for Representative

Plaintiff; (3) all Class Counsel's attorneys' fees and costs; and (4) the cost of settlement administration. Defendant will also make all required employer withholdings from any portions of the Settlement Awards (defined below) treated as wages under Internal Revenue Service ("IRS") Form W-2, and these contributions will not be deducted from the Global Settlement Fund unless there are unused funds (as set forth below).

17.     "Net Settlement Fund" means the fund for individual Settlement Awards (defined below) for all Eligible Settlement Participants after deducting all attorneys' fees, costs, expenses, the Service Award (defined below), and Settlement Administrator Costs (defined below). The portion of the Net Settlement Fund allocated to Eligible Settlement Participants who do not become Claimants will be returned to Defendant by the Settlement Administrator.

18.     "Notice of Settlement of Collective Action Lawsuit" ("Notice of Settlement") means the form that will be sent to each Eligible Settlement Participant; explain this settlement and the claims process; and provide a Consent Form that each Eligible Settlement Participant can complete, sign, and return to opt in to this FLSA settlement as an Opt-In Plaintiff. Those Consent Forms will be filed with the Court by Class Counsel. A copy of the Notice of Settlement is attached as **Exhibit 1**.

19.     "Released Claims" means, for Claimants, they will release their federal and state law wage claims, including any and all minimum wage claims, overtime claims, timely pay claims, and associated penalties, including liquidated/statutory damages, that were alleged in the Action, could have been alleged in the Action, or related to the claims alleged in the Action, including attorneys' fees, costs, expenses, interest, costs of settlement administration, and Service Awards against the Released Parties (defined below) for the Covered Period.

20.    "Released Parties" means Defendant and any of its owners, officers, directors, shareholders, employees, representatives, corporate parents, corporate siblings, subsidiaries, predecessors, successors, affiliates thereof, and otherwise related entities and any other persons acting by, through, under, or in concert with any of these persons or entities and their successors.

21.    "Service Award" means the payment made from the Global Settlement Fund to Representative Plaintiff for his services in bringing and prosecuting the Action.

22.    "Settlement" means the Parties' resolution of the Action as to Claimants and their release of claims.

23.    "Settlement Administrator" means Analytics Consulting, LLC.

24.    "Settlement Administrator Costs" means an amount for settlement administration fees, expenses, and costs incurred by the Settlement Administrator directly or indirectly related to its duties under this Agreement, including but not limited to all fees, expenses, and costs in connection with the Global Settlement Fund and Net Settlement Fund and those duties related to notice, check cutting and mailing, reports to counsel, court filings, legal and accounting advice relating to the establishment of the Net Settlement Fund and tax treatment and reporting of awards to Claimants, preparation of tax returns (and the taxes associated with such tax returns as defined below), and any other related duties.

25.    "Settlement Award" means the amount of the Net Settlement Fund calculated under Paragraph 43-45 of this Agreement by Class Counsel for each Eligible Settlement Participant. Settlement Awards will be paid to each Eligible Settlement Participant who becomes a Claimant by timely submitting a Consent Form. Eligible Settlement Participants who do not join this Action

by timely submitting a Consent Form will not receive their Settlement Awards (and will not release any claims).

## DENIAL OF LIABILITY

26.     Defendant denies liability or wrongdoing of any kind associated with the claims and actions alleged in the Action. Consequently, this Agreement is a compromise and shall not be construed as an admission of liability, culpability, wrongdoing, or negligence by Defendant or the Released Parties for any purpose and under any circumstance. This Agreement and the negotiations that occurred in connection with its creation shall not constitute evidence with respect to any issue or dispute in any lawsuit, legal proceeding, or administrative proceeding except for legal proceedings concerning the enforcement or interpretation of this Agreement. The Parties do not concede any claims or defenses that were, or could have been, raised in the Action, including whether this action could have proceeded as a collective action under the FLSA or a class action under Ohio law for any purpose other than settlement; rather, they merely negotiated and reached a settlement to avoid further disputes and litigation and the attendant inconvenience and expense.

## CERTIFICATION OF THE COLLECTIVE

27.     For purposes of this Settlement only, the Parties agree that Representative Plaintiff, Current Opt-In Plaintiffs, and each Eligible Settlement Participant are similarly situated under 29 U.S.C. § 216(b) of the FLSA and agree to certification for the collective of Eligible Settlement Participants.  If the Court does not approve the Settlement, the Parties agreement shall not constitute evidence or a binding determination that the requirements for certification are satisfied and Defendant does not waive any defenses to such certification.

28.     Representative Plaintiff's claims brought under the Ohio Wage Act pursuant to Federal Rule of Civil Procedure 23, which were not certified by this Court, are being dismissed without prejudice, noting that while Representative Plaintiff, Current Opt-In Plaintiffs, and Claimants who worked in Ohio (as defined and identified in the Settlement Agreement) have released all Ohio Wage Act claims against Defendant through this Settlement Agreement, no other Eligible Settlement Participant who declines to participate in this Settlement has released any claims against Defendant nor has received any consideration with regard to these claims.

## DUTIES OF THE PARTIES TO COOPERATE TO OBTAIN COURT APPROVAL OF THE SETTLEMENT

29.     The Parties will fully cooperate with each other and use reasonable efforts, including all efforts contemplated by this Settlement and any other efforts ordered by the Court, to accomplish the terms of this Settlement, including but not limited to executing such documents and taking such other action(s) as may reasonably be necessary to obtain approval of this Settlement without material modifications and to implement its terms.

## SETTLEMENT ADMINISTRATOR'S DUTIES AND RESPONSIBILITIES

30.     The Parties agree to retain a Settlement Administrator responsible for:

a.      Establishing a Global Settlement Fund as a "Qualified Settlement Fund" within the meaning of Section 468B of the Internal Revenue Code of 1986, as amended, the Treas. Reg. Section 1.468B-1, *et seq.*;

b.      Issuing all funds from the Global Settlement Fund;

c.      Determining and finalizing the tax withholding amounts and employer payroll tax amounts for Claimants, as applicable;

d.      Preparing, printing, and disseminating the Notice of Settlement and Consent Form to all Eligible Settlement Participants;

e.    Promptly apprising Class Counsel and Defendant's Counsel of the activities of the Settlement Administrator, timely responding to inquiries of the Parties or their counsel, and copying Class Counsel and Defendant's Counsel on material correspondence;

f.    Promptly notifying Class Counsel and Defendant's Counsel of the number and identities of Claimants.

g.    Mailing Settlement Award checks (or other negotiable instrument) to all Claimants;

h.    Wiring Class Counsel's attorneys' fees and costs;

i.    Mailing the Service Award to Representative Plaintiff;

j.    Reissuing and remailing Settlement Award checks to Claimants who do not receive their Settlement Award checks;

k.    Remitting to the appropriate governmental entities all employer payroll taxes owed in connection with all payments to each Claimant;

l.    Issuing IRS Forms W-2, 1099, and W-9 forms (if required) for all payments to each Claimant;

m.    Ascertaining current addresses and addressees' information for each Notice of Settlement and Consent Form returned as undeliverable;

n.    Referring to Class Counsel all inquiries by Eligible Settlement Participants that the Settlement Administrator cannot resolve and/or that involve matters not within the Settlement Claim Administrator's duties specified in this Agreement;

o.    Promptly notifying the Parties' counsel of any material requests or communications made by any Eligible Settlement Participant who receives the Notice of Settlement and Consent Form;

p.    Maintaining adequate records of the Settlement Administrator's activities, including the date of the mailing of the Notices of Settlement and Consent Forms, receipt of returned mail, and other communications and attempted communications with Eligible Settlement Participants as well as providing the Parties' counsel with weekly reports of returned Consent Forms regarding the same;

q.    Confirming, in writing to the Parties' counsel, the Settlement Administrator's completion of the administration of this Settlement and retaining copies of all endorsed Settlement Award checks;

r.    Notifying and returning to Defendant the portion of the Net Settlement Fund allocated to Eligible Settlement Participants who do not become Claimants along with any additional remainder of the Global Settlement Fund as set forth herein; and

s.    Such other tasks as customarily and regularly performed by a settlement administrator and as the Parties mutually agree.

## <u>SETTLEMENT ADMINISTRATION</u>

31.    Within **seven (7) days** of an Order approving the Settlement, the Settlement Administrator shall open a bank account that will hold the Global Settlement Fund.

32.    Within **twenty one (21) days** of an Order approving the Settlement, Defendant shall deposit the Global Settlement Fund into the bank account opened by the Settlement Administrator.

33.    Within **fourteen  (14) days** of an Order approving the Settlement, Defendant shall provide the Settlement Administrator with an Excel spreadsheet listing the names, social security numbers, last known addresses, email addresses, and last known phone numbers for the Eligible Settlement Participants during the Covered Period as that information exists in Defendant's records.

34.     The Settlement Administrator shall send the Notice of Settlement and Consent Form by U.S. mail within **fourteen (14) days** after receipt of the list of Eligible Settlement Participants. Before sending the Notice of Settlement and Consent Form, the Settlement Administrator shall attempt to confirm the accuracy of the Eligible Settlement Participants' mailing addresses through the United States Post Office's National Change of Address database and shall mail the Notice of Settlement and Consent Form to any updated address obtained therefrom. The Notice of Settlement and Consent Form will include each Eligible Settlement Participant's potential Settlement Award if they timely submit a Consent Form.

35.     Each Eligible Settlement Participant shall have **sixty (60) days** from the date that the Notice of Settlement and Consent Form is initially sent to submit their signed and completed Consent Form, and any such submission must be postmarked, emailed, or facsimiled on, or before, the sixtieth (60th) day from the date of initial mailing. Class Counsel will file the returned and signed Consent Forms with the Court. Representative Plaintiff and Current Opt-In Plaintiffs are not required to submit a Consent Form to receive their Settlement Award checks or any other payment under this Agreement because they have already signed and filed a Consent Form. Class Counsel and Defendant's Counsel shall promptly meet and confer to address any disputes over the authenticity or effectiveness of a returned Consent Form. Defendant shall file any objection to a returned Consent Form within fourteen (14) days after the Consent Form is filed. The Settlement Administrator shall not mail the Settlement Award corresponding to any objected Consent Form until authorized by the Court.

36.     Within **thirty (30) days** after the expiration of the notice period (as set forth in Paragraph 35 above), the Settlement Administrator shall mail to all Claimants their respective

Settlement Awards. Each Claimant shall have **ninety (90) days** from the date that the Settlement Award is mailed to negotiate their Settlement Award. The Settlement Award represents the total amount of their combined wages and non-wages. If possible, the Settlement Administrator will issue each Claimant one single check representing the total amount of their Settlement Award by combining the wage and non-wage portions of their Settlement Award.

37. The Settlement Administrator will provide the Parties' counsel with a list of all of the Claimants and their Settlement Awards no later than **seven (7) days** after the Settlement Award checks are mailed to Claimants under Paragraph 36 of this Agreement.

## GLOBAL SETTLEMENT FUND AND TAXES

38. The Global Settlement Fund will be established as a "Qualified Settlement Fund" within the meaning of Section 468B of the Internal Revenue Code of 1986, as amended, the Treas. Reg. Section 1.468B-1, *et seq.* and shall be administered by the Settlement Administrator, subject to the ultimate authority of the Court.

39. The Settlement Administrator shall serve as trustee of the Global Settlement Fund and shall act as a fiduciary with respect to the handling, management, and distribution of the Global Settlement Fund, including the handling of tax-related issues and payments. The Settlement Administrator shall act in a manner necessary to qualify the Global Settlement Fund as a Qualified Settlement Fund and to maintain that qualification. The Parties shall cooperate to ensure such treatment and shall not take a position in any filing or before any tax authority inconsistent with such treatment. The Parties agree to any relation-back election required to treat the Global Settlement Fund as a Qualified Settlement Fund from the earliest possible date.

40.     The Parties recognize that the wage and non-wage awards provided via Settlement Awards to the Claimants will be subject to applicable tax withholding and reporting and employer payroll taxes. The Settlement Administrator shall calculate the employer's share of payroll taxes related to Settlement Award payments treated as wage income and, upon receipt of that calculation, Defendant will, as directed by the Settlement Administrator, deposit into the interest-bearing bank account opened by the Settlement Administrator a payment separate from the Global Settlement Fund to pay the employer's share of payroll taxes related to Settlement Award payments that are treated as wage income.

41.     All taxes (including any estimated taxes, interest, or penalties) arising with respect to income earned by the Global Settlement Fund, if any, including any taxes or tax detriments that may be imposed on Defendant with respect to income earned for any period during which the Global Settlement Fund does not qualify as a "Qualified Settlement Fund" for federal and state income tax purposes (hereinafter "Settlement Fund Taxes"), and expenses and costs incurred in connection with the operation and implementation of this Paragraph (including, without limitation, expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses relating to filing (or failing to file) any returns described herein or otherwise required to be filed pursuant to applicable authorities) (hereinafter "Settlement Fund Tax Expenses"), shall be paid out of the Global Settlement Fund. Further, Settlement Fund Taxes and Settlement Fund Tax Expenses shall be treated as a cost of the administration of the Global Settlement Fund. The Parties agree to cooperate with the Settlement Administrator, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions set forth in this Paragraph.

42.     The Settlement Administrator shall satisfy all federal, state, local, and other reporting requirements (including any applicable reporting with respect to attorneys' fees and other costs subject to reporting) and shall pay from the Global Settlement Fund any and all taxes as well as any other obligations with respect to the payments or distributions not otherwise addressed in this Agreement.

### CALCULATION OF SETTLEMENT AWARDS

43.     The Net Settlement Fund represents over 140% of the total calculated overtime damages. The total calculated overtime damages were calculated by analyzing the payroll and timekeeping records of Representative Plaintiff, Opt-In Plaintiffs, and Eligible Settlement Participants to determine each individual's amount of unpaid overtime owed as a result of Defendant's alleged failure to include bonuses in the regular rate of pay calculations during the Covered Period.

44.     Each individual Settlement Award was calculated as a pro rata share of the Net Settlement Fund based on each individual's respected calculated damages during the Covered Period.

45.     Representative Plaintiff, Current Opt-In Plaintiffs, and each Eligible Settlement Participant shall be eligible to receive a minimum Settlement Award of $20.00 if their calculated proportional share is less than that amount. Eligible Settlement Participants who do not join this Action by timely submitting a Consent Form will not receive their potential Settlement Award and will not release any claims.

### TAX TREATMENT OF THE SETTLEMENT AWARDS

46.     For tax purposes, the Parties agree that Settlement Awards will be: (a) fifty percent (50%) taxable, wage income paid under IRS Form W-2 and subject to ordinary payroll withholdings under federal and state law; and (b) fifty percent (50%) taxable, non-wage income paid under IRS Form 1099. As set forth in Paragraph 16, Defendant will make all required employer contributions with respect to any portions of the Settlement Awards paid as wages under IRS Form W-2, and these contribution amounts will not be deducted from the Global Settlement Fund.

## REMAINDER OF THE GLOBAL SETTLEMENT FUND

47.     If an Eligible Settlement Participant does not submit a timely Consent Form as set forth herein, they shall not receive their allocated individual Settlement Award.

48.     Any funds from the Global Settlement Fund that are not distributed under the terms of this Agreement will revert to Defendant, and this Agreement shall remain binding on all of the Claimants.

49.     All Settlement Award checks that are not negotiated by a Claimant within **ninety (90) days** of the date of issuance or **sixty (60) days** of reissuance, whichever is later, as noted on the Settlement Award checks mailed by the Settlement Administrator to the Claimants, shall be null and void; the associated funds shall not be redistributed among the Claimants, any such funds shall belong to Defendant, and this Agreement shall remain binding on all of the Claimants. The Settlement Administrator will mail a reminder postcard to all Claimants who have not cashed their checks no fewer than **thirty (30) days** before the expiration of the Settlement Award checks.

50.     After all issued or reissued checks are null and void, the Settlement Administrator shall deposit any remaining funds from the Global Settlement Fund that are not distributed under the terms of this Agreement into an account designated by Defendant.

## RELEASE OF CLAIMS

51.     In consideration for their Settlement Awards, each Claimant, on behalf of themselves and their respective heirs and assigns, forever and fully release the Released Parties from the Released Claims.

52.     In addition to the Released Claims and in consideration of his eligibility for a Service Award, Representative Plaintiff, on behalf of himself and his respective heirs, beneficiaries, devisees, legatees, executors, administrators, trustees, conservators, guardians, personal representatives, successors-in-interest and assigns, hereby knowingly and voluntarily forever releases and discharges the Released Parties from any and all claims, obligations, causes of action, actions, losses, expenses, demands, rights, and liabilities of every kind, nature and description, whether known or unknown, whether anticipated or unanticipated, arising prior to the date that the Court enters the Approval Order, including but not limited to those claims that: (a) were pled in the Action at any time; (b) could have been pled in the Action, including all claims based on any of the following: (i) alleged failure to pay any type of overtime wages, (ii) alleged failure to pay any type of minimum wages, (iii) alleged failure to pay any type of otherwise earned wages (including straight time wages, bonuses, commissions, incentive payments, etc.), (iv) any other alleged federal wage-and-hour violation, (v) any other alleged state wage-and-hour violation; (vi) alleged discrimination, retaliation, harassment, or wrongful discharge, including, without limitation, claims under the Sarbanes-Oxley Act or the False Claims Act ("FCA") as well as claims

arising under the Employee Retirement Income Security Act of 1974 ("ERISA"); the Age Discrimination in Employment Act ("ADEA"); the Worker Adjustment and Retraining Notification Act ("WARN"); the Fair Credit Reporting Act ("FCRA"); the Family and Medical Leave Act ("FMLA"); the Equal Pay Act; the Genetic Information Nondiscrimination Act ("GINA"); and any Ohio counterparts, (vii) any right to reinstatement of employment with Defendant and any duty or obligation of Defendant to consider Representative Plaintiff for future employment, and (viii) any statutory, constitutional, regulatory, contractual or common law employment-related claims for wages, damages, restitution, equitable relief, or litigation costs; and (c) this release includes any and all of the following based on any of the matters released by the foregoing: penalties, statutory damages, liquidated damages, punitive damages, attorneys' fees and expenses, litigation costs, restitution, and equitable relief ((a) through (c) will hereinafter be referred to as "Representative Plaintiff's Released Claims").

53. Further, in consideration for the payment of their attorneys' fees and costs, each Claimant, on behalf of themselves and their respective heirs and assigns, hereby release all claims, causes of action, demands, damages, costs, rights, and liabilities of every nature and description for attorneys' fees, costs, and expenses against the Released Parties arising from or related to the Action, including in relation to any inquiry, research, and settlement discussions that they conducted as well as the Complaint.

## ATTORNEYS' FEES AND COSTS

54. Class Counsel will request payment of their attorneys' fees for services in the amount of one-third (equal to $13,333.33) of the Global Settlement Fund and litigation expenses of $402.00. Any attorneys' fees and litigation expenses approved by the Court will be paid from

the Global Settlement Fund. This Settlement is conditioned upon the Court's approval of Class Counsel's request for fees and litigation expenses. The Settlement Administrator will wire Class Counsel's Court-approved attorneys' fees and litigation expenses **seven (7) days** after Defendant funds the Global Settlement Fund.

## SERVICE AWARDS

55.     Class Counsel will seek an Order from the Court approving a Service Award for Representative Plaintiff in the amount of $1,500.00. The Service Award approved by the Court will be paid from the Global Settlement Fund. This Settlement is not conditioned upon the Court's approval of the Service Award, and any amount not approved by the Court will revert to the Net Settlement Fund. For tax purposes, the Parties agree that the Service Awards will be non-wage income paid under IRS Form 1099. The Settlement Administrator will mail the Court-approved Service Awards **seven (7) days** after Defendant funds the Global Settlement Fund.

## NOTICES

56.     All notices, requests, demands, and other communications required or permitted to be given pursuant to this Agreement shall be in writing and shall be delivered personally, via electronic mail, or mailed, postage prepaid, by first-class mail to the undersigned persons at their respective addresses:

**Class Counsel:**
Matthew J.P. Coffman
Adam C. Gedling
Kelsie N. Hendren
Tristan T. Akers
COFFMAN LEGAL, LLC
1550 Old Henderson Road, Suite 126
Columbus, Ohio 43220
Phone: 614.949.1181
Fax: 614.386.9964

**Defendant's Counsel:**
Frank L. Day
FORDHARRISON LLP
1715 Aaron Brenner Dr., Suite 200
Memphis, TN 38120
Phone: 901.291.1500
Fax: 901.291.1501

## CONSTRUCTION, INTERPRETATION, AND MODIFICATION

57.     This Agreement constitutes the entire agreement between the Parties with respect to the subject matter included in this Agreement and shall supersede all prior and contemporaneous negotiations between the Parties. This Agreement shall be construed as a whole according to its fair meaning and intent, and not strictly for, or against, any party, regardless of who drafted, or who was principally responsible for drafting, this Agreement or any specific term or condition in this Agreement. The Parties participated in the negotiation and drafting of this Agreement and had available to them the advice and assistance of independent counsel. As such, the Parties may not claim that any ambiguity in this Agreement should be construed against another.

58.     If there is a conflict between this Agreement and any other document related to this Settlement, the Parties intend for this Agreement to control.

59.     Except as expressly provided herein, this Agreement has not been executed in reliance upon any other oral or written representations or terms, and no such extrinsic oral or written representations or terms shall modify, vary, or contradict its terms. The Parties agree that this Agreement is to be construed according to its terms and may not be varied or contradicted by extrinsic evidence.

60.     This Agreement shall be subject to, governed, construed, enforced, and administered in accordance with the laws of the State of Ohio and shall be subject to the continuing

jurisdiction of the Court. The Parties agree that if either Party breaches any of the terms and conditions of this Agreement, the non-breaching Party shall be entitled to reasonable attorneys' fees and expenses incurred in enforcing the terms and conditions contained herein.

61.     If any provision of this Agreement is held by a court of competent jurisdiction to be void, voidable, unlawful, or unenforceable, the remaining portions of this Agreement will remain in full force and effect to the extent that the effect of this Agreement, as well as the obligations of the Parties, remain(s) materially the same.

62.     This Agreement may not be modified or amended except in writing, signed by the Parties, and as approved by the Court. This Agreement, any amendments or modifications to it, and any other documents required or contemplated to be executed in order to consummate this Agreement may be executed in one or more counterpart(s), each of which shall be deemed an original of this Agreement. All counterparts of any such document together shall constitute one and the same instrument. A photocopy, facsimile, or digital image of an executed counterpart shall be enforceable and admissible as an original.

63.     This Agreement is binding upon, and shall inure to the benefit of, the Parties. Without limiting the foregoing, this Agreement specifically shall inure to the benefit of the Released Parties; likewise, this Agreement shall be binding upon Representative Plaintiff's and the Claimants' spouses, children, heirs, assigns, administrators, executors, beneficiaries, conservators, successors, and offspring.

## **CONTINUING JURISDICTION**

64.     The Parties agree to move for the Court to retain continuing jurisdiction to construe, interpret, and enforce the provisions of this Agreement; to supervise the administration and

distributions from the Global Settlement Fund; and to hear and adjudicate any dispute or litigation arising from, or related to, this Agreement or issues of law and facts asserted in the Action.

**WHEREFORE**, having fully read and understood the terms of this Agreement, the Parties sign their names below with the intention that they shall be bound by it.

| | |
|---|---|
| DATED: _____ | **DEFENDANT**<br><br>Premium Guard, Inc.<br><br>By: _____<br><br>Its: _____ |

| | |
|---|---|
| DATED: 06/24/2024 _____ | **REPRESENTATIVE PLAINTIFF**<br>George Byrd<br><br>_____ |

distributions from the Global Settlement Fund; and to hear and adjudicate any dispute or litigation arising from, or related to, this Agreement or issues of law and facts asserted in the Action.

**WHEREFORE**, having fully read and understood the terms of this Agreement, the Parties sign their names below with the intention that they shall be bound by it.

| DATED: 7/20/2024 | **DEFENDANT** |
| --- | --- |
| | Premium Guard, Inc. |
| | By: _(signature)_ |
| | Its: CHIEF OPERATIONS OFFICER |

| DATED: _____ | **REPRESENTATIVE PLAINTIFF** |
| --- | --- |
| | George Byrd |
| | _____ |

Page **20** of **20**